**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION**

REGINALD A. LITTLEFIELD individually )
and HOMETOWN SALES AND )
RENTALS HOME STORE, LLC, )
D/B/A HOMETOWN PAWN, )
a South Carolina limited liability company, )    Case No. _____
)
Plaintiffs, )
)
vs. )
)    **VERIFIED COMPLAINT**
CITY OF WOODRUFF, SOUTH )    **(Jury Trial Demanded)**
CAROLINA, a political subdivision, and )
CODE CONSULTING & INSPECTION )
SERVICES, LLC, a South Carolina limited )
liability company; and CLARK TAYLOR, )
individually and in his official capacity, )
)
Defendants. )

NOW COMES the Plaintiffs, Reginald A. "Reggie" Littlefiled and Hometown Sales and Rental Home Store, LLC, D/B/A Hometown Pawn, by and through their attorney, Ryan F. McCarty, and complains of the Defendants, City of Woodruff, South Carolina, Code Consulting & Inspection Services, LLC, and Clark Taylor, and hereby states and alleges as follows:

## NATURE OF THE ACTION

1.      This is a civil rights action brought pursuant to 42 U.S.C. § 1983 to redress the deprivation under color of state law of rights secured to Plaintiffs by the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution.

2.      Plaintiffs seek declaratory relief, compensatory damages, consequential damages, punitive damages against the individual Defendants where appropriate, attorneys' fees and costs pursuant to 42 U.S.C. § 1988, pre- and post-judgment interest, and such other relief as the Court deems just and proper.

1

## JURISDICTION AND VENUE

3. This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) as this action arises under the Constitution and laws of the United States.

4. This Court also has jurisdiction pursuant to 28 U.S.C. § 1343, which confers original jurisdiction on the district courts in any civil action authorized by law to redress the deprivation, under color of state law, of any right, privilege or immunity secured by the Constitution of the United States.

5. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and Local Civil Rule 3.01 because a substantial part of the events or omissions giving rise to the claims occurred in this district, and all Defendants reside or conduct business in this district.

## PARTIES

6. Plaintiff Reginald A. "Reggie" Littlefield ("Littlefield") is an adult individual and citizen of the United States and a resident of Spartanburg County, South Carolina.

7. Plaintiff Hometown Sales and Rentals Home Store, LLC d/b/a Hometown Pawn ("Hometown Pawn") is a South Carolina limited liability company with its principal place of business located at 210 Church Street, Woodruff, South Carolina 29388, in Spartanburg County.

8. Plaintiff Littlefield is the member manager of Hometown Pawn and owns and operates the business.

9. Defendant City of Woodruff ("the City") is, upon information and belief, a public body corporate organized and existing under the laws of the State of South Carolina, located in Spartanburg County, South Carolina.

10.     At all times relevant to this action, the City acted under color of state law and was responsible for the enforcement of building codes, the issuance of certificates of occupancy, and the regulation of business operations within the corporate limits of the City of Woodruff.

11.     Defendant CC&I Services, LLC, A/K/A Code Consulting & Inspection Services, LLC ("CC&I" or "CC&I Services") is a South Carolina limited liability company that provides building code inspections, plan review services, and code consulting services to municipalities in South Carolina, including the City of Woodruff.

12.     At all times relevant to this action, CC&I was hired by and acted as an agent of the City of Woodruff to provide building code inspections, code consulting, building department supplemental services, plan review services, complete building department and fire code inspections.

13.     At all times relevant to this action, CC&I acted under color of state law by virtue of its contractual relationship with the City of Woodruff and its delegation of municipal authority to enforce building codes and issue citations on behalf of the City.

14.     Defendant Clark Taylor is an individual who was, at all times relevant to this Complaint, an employee, agent, and/or representative of CC&I Services, LLC.

15.     At all times relevant to this action, Defendant Taylor acted under color of state law by virtue of his employment with CC&I and the delegation of municipal authority from the City of Woodruff to CC&I.

16.     Defendant Taylor is sued in both his individual and official capacities.

17.     At all times relevant to this Complaint, Defendants acted jointly, in concert, and in conspiracy with one another to deprive Plaintiffs of their constitutional rights as hereinafter alleged.

## FACTUAL ALLEGATIONS

### A. Background and The Property

18.    Plaintiff Littlefield is the owner and operator of Hometown Pawn, a pawn shop business operating under the formal business name Hometown Sales and Rentals Home Store, LLC d/b/a Hometown Pawn.

19.    Hometown Pawn has operated as a lawful business in the City of Woodruff, South Carolina for several years.

20.    The physical building where Hometown Pawn currently operates is located at 210 Church Street, Woodruff, South Carolina 29388, in Spartanburg County (hereinafter "the Property" or "the Subject Property").

21.    The Property consists of approximately 1.66 acres of land with a building structure of approximately 1,600 square feet.

22.    Plaintiff Littlefield acquired the Property by Deed from John Benjamin Harrison dated November 3, 2022, and recorded on November 3, 2022, in Deed Book 139-Q, Page 271, in the Office of the Register of Deeds for Spartanburg County, South Carolina.

23.    The Subject Property was previously owned by the City of Woodruff itself.

24.    The City of Woodruff conveyed the Subject Property to John Benjamin Harrison by Deed dated September 7, 2017, recorded September 12, 2017, in Deed Book 117-A, Page 520, in the Office of the Register of Deeds for Spartanburg County.

25.    Prior to Mr. Harrison, the City of Woodruff acquired the Property by Deed from Duke Power Company recorded on July 8, 1994, in Deed Book 61-P at Page 901 in said Register of Deeds Office.

26.    Thus, the City of Woodruff had direct, firsthand knowledge of the physical characteristics, size, and condition of the Subject Property, having once owned it themselves.

27.    The building structure at 210 Church Street is a one-story building, less than three stories high, and contains fewer than 5,000 square feet of total floor area.

28.    The building is not used for assembly, institutional, educational, or hazardous occupancies as defined by the applicable building code.

29.    The building is used solely for retail pawn shop operations.

**B. Prior Location and Transfer of Business Operations**

30.    Prior to December 2022, Plaintiff Littlefield operated Hometown Pawn at a different location within the City of Woodruff.

31.    Hometown Pawn held a valid business license from the City of Woodruff for its operations at the previous location.

32.    In December 2022, Plaintiff Littlefield decided to relocate Hometown Pawn from its previous location to the Subject Property at 210 Church Street, Woodruff, South Carolina.

33.    Prior to moving to the new location at 210 Church Street, Plaintiff Littlefield contacted the City of Woodruff to inquire about the proper procedures for transferring his business license from the previous location to the new location at 210 Church Street.

34.    Plaintiff Littlefield was informed by representatives and/or employees of the City of Woodruff that his information had been updated in the City's records and that he was "good to go" to operate his business at the new location.

35.    Based on these representations from the City, Plaintiff Littlefield reasonably believed that he had complied with all municipal requirements and was authorized to operate Hometown Pawn at 210 Church Street.

36.     Relying on the City's representations, Plaintiff Littlefield invested substantial time, money, and resources into preparing the new location for business operations.

37.     Plaintiff Littlefield installed banners on the outside of the building at 210 Church Street announcing the opening of Hometown Pawn at its new location.

38.     Hometown Pawn opened for business at 210 Church Street in December 2022.

39.     At no time prior to opening did any representative of the City of Woodruff inform Plaintiff Littlefield that a Certificate of Occupancy was required for the Subject Property.

40.     At no time prior to opening did any representative of the City of Woodruff inform Plaintiff Littlefield that the building structure required any inspections, permits, or code compliance reviews.

## C. The Unlawful Shutdown of Hometown Pawn

41.     Shortly after Hometown Pawn opened at its new location, Plaintiff Littlefield was contacted by Brandon McMahan, an employee and/or agent of the City of Woodruff.

42.     Mr. McMahan scheduled a walk-through inspection of the building with Plaintiff Littlefield.

43.     On or about February 15, 2023, Mr. Brandon McMahan and Defendant Clark Taylor, an employee or agent of CC&I Services, arrived at Hometown Pawn to conduct the walk-through inspection.

44.     Following the walk-through, Mr. Brandon McMahan issued Citation No. 802 to Hometown Pawn.

45.     Citation No. 802 noted the alleged violation as "operating w/o a CO" (operating without a Certificate of Occupancy).

46.    In the section of the citation entitled "Corrective Actions Needed," Mr. McMahan wrote: "Cease all business until CO is issued."

47.    The citation was dated February 15, 2023.

48.    Mr. McMahan informed Plaintiff Littlefield that he must immediately cease all business operations at 210 Church Street.

49.    Mr. McMahan stated that Hometown Pawn could not operate from the Subject Property until a Certificate of Occupancy was obtained from the City of Woodruff.

50.    Defendant Clark Taylor was present during the inspection and issuance of the citation and acted in concert with Mr. McMahan in his official capacity as a representative of CC&I Services.

51.    No formal hearing was provided to Plaintiffs before the cease-and-desist order was imposed.

52.    No written notice of charges or opportunity to respond was provided to Plaintiffs before the order to shut down was issued.

53.    Plaintiffs were given no opportunity to be heard before being deprived of their property interest in operating their business.

54.    Following the issuance of Citation No. 802 and the cease-and-desist order, Hometown Pawn remained closed for over two months.

55.    During this period of forced closure, Plaintiffs suffered substantial financial losses, including lost revenue, lost business opportunities, continuing overhead expenses, and damage to business reputation and goodwill.

**D. Statutory Exemption from Certificate of Occupancy Requirement**

56.     The building structure at 210 Church Street is approximately 1,600 square feet in size.

57.     The building is less than three stories high.

58.     The building contains fewer than 5,000 square feet of total floor area.

59.     The building is not an assembly, institutional, educational, or hazardous occupancy as defined by the applicable Standard Building Code or International Building Code.

60.     Pursuant to South Carolina Code of Laws Section 40-3-290(C)(2), buildings that are less than three stories high and contain fewer than 5,000 square feet of total floor area are exempt from the architectural registration requirements and related code compliance analysis, except for buildings of assembly, institutional, educational, and hazardous occupancies, regardless of area.

61.     The statutory exemption under S.C. Code Section 40-3-290(C)(2) applies to the Subject Property at 210 Church Street because it meets all criteria for the exemption.

62.     Under applicable South Carolina law, the safety code analysis required for larger or more complex buildings was not necessary for the Subject Property.

63.     Defendants had no legal basis under South Carolina law to require a Certificate of Occupancy for the Subject Property or to condition Plaintiff's operation of Hometown Pawn on obtaining such a certificate.

64.     Defendants knew or should have known that the Subject Property fell within the statutory exemption and that no Certificate of Occupancy was required.

65.     The City of Woodruff, having previously owned the Subject Property, had actual and constructive knowledge of the size and characteristics of the building and knew or should have known that it was exempt from the Certificate of Occupancy requirement.

**E. Deprivation of Property Rights Without Due Process**

66.     Plaintiff Littlefield has a protected property interest in the operation of Hometown Pawn and in the use of the Subject Property for lawful business purposes.

67.     Plaintiff Littlefield has a protected property interest in his business license and in conducting business operations free from arbitrary and unlawful government interference.

68.     By ordering the immediate cessation of business operations without notice, without a hearing, and without any opportunity to be heard, Defendants deprived Plaintiffs of their property interest without due process of law.

69.     Defendants' actions in shutting down Hometown Pawn without legal justification constituted an unreasonable seizure of Plaintiffs' property in violation of the Fourth Amendment to the United States Constitution.

70.     Defendants' actions in shutting down Hometown Pawn without just compensation constituted a taking of Plaintiffs' property in violation of the Fifth Amendment to the United States Constitution, as applied to the states through the Fourteenth Amendment.

71.     Defendants' actions in depriving Plaintiffs of their property interest without adequate pre-deprivation or post-deprivation process violated Plaintiffs' right to procedural due process under the Fourteenth Amendment.

72.     Defendants' actions in shutting down Hometown Pawn based on an inapplicable legal standard and without legal justification violated Plaintiffs' right to substantive due process under the Fourteenth Amendment.

73.    Defendants' conduct was intentional, deliberate, arbitrary, and targeted at Plaintiffs.

74.    Defendants' conduct was not the result of a random, unauthorized act by a low-level employee, but rather was the direct result of municipal policy, custom, practice, and deliberate indifference to Plaintiffs' constitutional rights.

## F. Action Under Color of State Law

75.    At all times relevant to this Complaint, Defendant City of Woodruff acted under color of state law in its capacity as a municipal corporation exercising delegated state authority to enforce building codes, issue certificates of occupancy, and regulate business operations within its jurisdiction.

76.    At all times relevant to this Complaint, Defendant CC&I Services acted under color of state law by virtue of its contractual relationship with the City of Woodruff.

77.    The City of Woodruff delegated to CC&I Services the municipal authority to conduct building code inspections, issue citations, and enforce building code compliance on behalf of the City.

78.    CC&I Services was performing a traditional and exclusive public function - the enforcement of building codes and the exercise of police power - on behalf of the City of Woodruff.

79.    CC&I Services and its employees, including Defendant Clark Taylor, were acting as agents of the City of Woodruff and were cloaked with the authority of the municipality.

80.    The actions of CC&I Services and Defendant Taylor were fairly attributable to the City of Woodruff because they were undertaken pursuant to a contractual delegation of municipal authority and in furtherance of the City's building code enforcement policies.

81.     Defendant Clark Taylor, as an employee and agent of CC&I Services, acted under color of state law in conducting the inspection, participating in the issuance of the citation, and enforcing the unlawful shutdown order against Plaintiffs.

82.     All Defendants acted jointly, in concert, and pursuant to an express or tacit understanding to deprive Plaintiffs of their constitutional rights.

## G. Municipal Policy, Custom, Practice, and Deliberate Indifference

83.     The constitutional violations alleged herein were caused by and resulted from the policies, customs, practices, and deliberate indifference of Defendant City of Woodruff.

84.     Defendant City of Woodruff had an official policy, custom, or practice of delegating its building code enforcement authority to CC&I Services without providing adequate training, supervision, or oversight to ensure constitutional compliance.

85.     Defendant City of Woodruff had an official policy, custom, or practice of permitting CC&I Services and its employees to issue citations and enforce building code violations without adequate procedural safeguards to protect the due process rights of property owners and business operators.

86.     Defendant City of Woodruff had an official policy, custom, or practice of failing to provide notice and an opportunity to be heard before depriving individuals of their property interests in business operations.

87.     Defendant City of Woodruff had an official policy, custom, or practice of enforcing building code requirements arbitrarily and without regard to statutory exemptions or the legal rights of property owners.

11

88.     Defendant City of Woodruff had an official policy, custom, or practice of ratifying and approving the unconstitutional actions of CC&I Services and its employees, including the unlawful shutdown of Hometown Pawn.

89.     Defendant City of Woodruff was deliberately indifferent to the constitutional rights of Plaintiffs and to the clearly established risk that its policies, customs, and practices would result in violations of constitutional rights.

90.     Defendant City of Woodruff failed to properly train, supervise, and discipline its employees and contractors, including CC&I Services, regarding the constitutional requirements of notice, hearing, and due process before depriving individuals of property interests.

91.     The failure to train was deliberate and constituted gross negligence or deliberate indifference to the rights of persons such as Plaintiffs.

92.     The need for such training was obvious in light of the delegated authority granted to CC&I Services and the frequency with which CC&I Services would be required to make decisions affecting constitutionally protected property rights.

93.     The City's failure to provide adequate training, supervision, and oversight was the moving force behind the constitutional violations suffered by Plaintiffs.

94.     Defendant City of Woodruff's policies, customs, practices, and deliberate indifference were the direct and proximate cause of the deprivation of Plaintiffs' constitutional rights.

95.     The actions taken against Plaintiffs were not the isolated acts of rogue employees, but rather were undertaken pursuant to and in furtherance of established municipal policies, customs, and practices.

12

96.    Defendant City of Woodruff ratified the unconstitutional conduct of CC&I Services and Defendant Taylor by failing to take corrective action, by maintaining the unlawful shutdown order for over two months, and by continuing to delegate enforcement authority to CC&I Services despite knowledge of constitutional violations.

**H. Joint Action and Conspiracy**

97.    Defendants acted jointly and in concert pursuant to a common plan, design, and conspiracy to deprive Plaintiffs of their constitutional rights.

98.    Defendants reached an understanding, express or tacit, to deprive Plaintiffs of their property rights without due process and without legal justification.

99.    The City of Woodruff, through its employees and agents, conspired and collaborated with CC&I Services and Defendant Taylor to enforce an unlawful shutdown order against Hometown Pawn.

100.    CC&I Services and Defendant Taylor, acting under the authority delegated by the City of Woodruff, conspired and collaborated with the City to issue the unlawful citation and to enforce the unconstitutional cease and desist order.

101.    Each Defendant took affirmative steps in furtherance of the conspiracy and common plan, including conducting the inspection, issuing the citation, enforcing the shutdown order, and maintaining the deprivation of Plaintiffs' property rights for over two months.

102.    As a direct and proximate result of the joint action and conspiracy among Defendants, Plaintiffs suffered the constitutional violations and damages alleged herein.

**I. Damages**

103.    As a direct and proximate result of Defendants' unlawful actions, Plaintiffs suffered substantial economic damages, including but not limited to:

a.     Lost business revenue during the period of forced closure exceeding two months;

b.     Lost business opportunities and customer relationships;

c.     Continuing overhead expenses including utilities, insurance, and other fixed costs incurred while unable to operate;

d.     Damage to business reputation and goodwill;

e.     Costs associated with attempted compliance with the unlawful shutdown order;

f.     Other consequential damages to be proven at trial.

104.     As a direct and proximate result of Defendants' unlawful actions, Plaintiff Littlefield suffered non-economic damages, including but not limited to emotional distress, anxiety, humiliation, and injury to reputation.

105.     Defendants' conduct was willful, wanton, malicious, and in reckless disregard of Plaintiffs' constitutional rights, thereby entitling Plaintiffs to an award of punitive damages against the individual Defendant.

**FIRST CAUSE OF ACTION**
**VIOLATION OF 42 U.S.C. § 1983**
**UNLAWFUL DEPRIVATION OF PROPERTY WITHOUT DUE PROCESS**
**AND WITHOUT JUST COMPENSATION**
**(Fourth, Fifth, and Fourteenth Amendments)**
**(Against All Defendants)**

106.     Plaintiffs reallege and incorporate by reference all preceding paragraphs as if fully set forth herein.

107.     At all times relevant to this Complaint, Plaintiffs had a clearly established property interest protected by the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution.

108.     Plaintiff Littlefield had a protected property interest in operating Hometown Pawn as a lawful business.

14

109. Plaintiff Littlefield had a protected property interest in the use and enjoyment of the Subject Property at 210 Church Street for lawful business purposes.

110. Plaintiff Littlefield had a protected property interest in his business license and in conducting business operations free from arbitrary and unlawful government interference.

111. Plaintiff Hometown Pawn had a protected property interest in its ongoing business operations, customer relationships, business reputation, and goodwill.

112. At all times relevant to this Complaint, Defendants acted under color of state law as alleged herein.

113. Defendants, acting under color of state law, deprived Plaintiffs of their protected property interests by ordering the immediate cessation of business operations and enforcing an unlawful shutdown order for a period exceeding two months.

114. Defendants' actions constituted an unlawful seizure of Plaintiffs' property in violation of the Fourth Amendment to the United States Constitution.

115. Defendants' seizure of Plaintiffs' property was objectively unreasonable under the Fourth Amendment because:

a. Defendants had no legal authority or justification to require a Certificate of Occupancy for the Subject Property;

b. The Subject Property was statutorily exempt from the Certificate of Occupancy requirement under S.C. Code Section 40-3-290(C)(2);

c. Defendants knew or should have known of the statutory exemption;

d. Defendants acted arbitrarily and without regard to clearly established legal standards;

e.     Defendants provided no notice or opportunity to be heard before effectuating the seizure.

116.     Defendants' actions constituted a taking of Plaintiffs' property without just compensation in violation of the Fifth Amendment to the United States Constitution, as applied to the states through the Fourteenth Amendment.

117.     Defendants appropriated Plaintiffs' property interest in business operations for a public purpose - the alleged enforcement of building codes - without providing just compensation for the forced closure and resulting losses.

118.     Defendants deprived Plaintiffs of substantially all economically viable use of their property for a period exceeding two months without compensation.

119.     Defendants' actions constituted a deprivation of property without due process of law in violation of the Fourteenth Amendment to the United States Constitution.

120.     Defendants violated Plaintiffs' right to procedural due process by depriving Plaintiffs of their protected property interests without adequate notice and without any meaningful opportunity to be heard.

121.     Defendants provided no pre-deprivation notice or hearing before ordering the immediate cessation of business operations.

122.     Defendants provided no post-deprivation hearing or remedy adequate to redress the constitutional violation.

123.     The deprivation of Plaintiffs' property was not the result of a random, unauthorized act by a low-level employee such that pre-deprivation process would have been impracticable. Rather, it was the result of established municipal policy, custom, and practice.

124.    Pre-deprivation notice and a hearing were entirely practicable under the circumstances, and Defendants' failure to provide such process violated clearly established constitutional law.

125.    Defendants violated Plaintiffs' right to substantive due process by taking arbitrary and irrational action that shocked the conscience and had no legitimate governmental purpose.

126.    Defendants' enforcement of an inapplicable legal requirement against the Subject Property was arbitrary, capricious, and contrary to clearly established South Carolina law.

127.    Defendants' conduct was intentional, deliberate, and targeted at Plaintiffs.

128.    Defendants knew or should have known that their conduct violated clearly established constitutional rights of which a reasonable person would have known.

129.    The constitutional violations alleged herein were the direct and proximate cause of Plaintiffs' injuries and damages.

130.    Defendant City of Woodruff is liable because the constitutional violations were caused by and resulted from the policies, customs, practices, and deliberate indifference of the City as alleged herein.

131.    Defendants CC&I Services and Clark Taylor acted under color of state law by virtue of the contractual delegation of municipal authority from the City of Woodruff and the performance of traditional and exclusive public functions on behalf of the City.

132.    Defendants acted jointly, in concert, and pursuant to an express or tacit understanding to deprive Plaintiffs of their constitutional rights.

133.    As a direct and proximate result of Defendants' violations of 42 U.S.C. § 1983, Plaintiffs suffered substantial compensatory damages, consequential damages, and are entitled to

declaratory relief, punitive damages against the individual Defendant, attorneys' fees and costs, and all other relief deemed just and proper by this Court.

## FOR S SECOND CAUSE OF ACTION
### FAILURE TO TRAIN AND SUPERVISE
**(Against Defendant Code Consulting & Inspection Services, LLC)**

134.    Plaintiffs reallege and incorporate by reference all preceding paragraphs as if fully set forth herein.

135.    Defendant CC&I Services, LLC had a duty to properly train, supervise, and direct its employees, agents, and representatives, including Defendant Clark Taylor, in the performance of building code enforcement activities and the exercise of delegated municipal authority.

136.    Defendant CC&I Services knew or should have known that its employees would be required to make decisions affecting the constitutional rights of property owners and business operators in the course of conducting building inspections and enforcing building code compliance.

137.    Defendant CC&I Services knew or should have known that failure to properly train and supervise its employees regarding constitutional requirements - including the requirements of notice, hearing, due process, and adherence to statutory exemptions - would result in violations of constitutional rights.

138.    Defendant CC&I Services failed to provide adequate training to its employees, including Defendant Taylor, regarding:

a.    The constitutional requirements of procedural due process, including notice and opportunity to be heard before depriving individuals of property interests;

b.    The constitutional prohibitions against unreasonable seizures under the Fourth Amendment;

c.     The constitutional requirement of just compensation for takings under the Fifth Amendment;

d.     The applicable South Carolina statutes governing building code requirements and exemptions, including S.C. Code Section 40-3-290;

e.     The proper procedures for determining when buildings are exempt from Certificate of Occupancy requirements;

f.     The prohibition against arbitrary and targeted enforcement actions.

139.    Defendant CC&I Services failed to adequately supervise its employees, including Defendant Taylor, in the exercise of delegated municipal authority and the enforcement of building codes.

140.    Defendant CC&I Services failed to establish and implement adequate policies, procedures, and protocols to ensure constitutional compliance in building code enforcement activities.

141.    Defendant CC&I Services failed to review, monitor, or oversee the actions of its employees to prevent constitutional violations.

142.    Defendant CC&I Services was deliberately indifferent to the constitutional rights of property owners and business operators such as Plaintiffs.

143.    The need for proper training and supervision was obvious in light of the authority exercised by CC&I Services' employees and the frequency with which they would encounter situations requiring constitutional compliance.

144.    Defendant CC&I Services' failure to train and supervise was not merely negligent, but constituted gross negligence or deliberate indifference to the rights of persons with whom its employees would come into contact.

19

145. Defendant CC&I Services' failure to properly train and supervise its employees was the moving force behind and the direct and proximate cause of the constitutional violations suffered by Plaintiffs.

146. But for CC&I Services' failure to train and supervise, the constitutional violations alleged herein would not have occurred.

147. Defendant Taylor's unconstitutional conduct was a direct and foreseeable result of CC&I Services' failure to train and supervise.

148. The constitutional violations suffered by Plaintiffs were not isolated incidents, but rather were the result of systemic failures in training, supervision, and policy implementation by CC&I Services.

149. CC&I Services' failure to train and supervise was part of a deliberate and targeted response against Plaintiff, conducted without regard to constitutional requirements or legal standards.

150. As a direct and proximate result of CC&I Services' failure to train and supervise, Plaintiffs suffered substantial compensatory damages, consequential damages, and are entitled to declaratory relief, attorneys' fees and costs, and all other relief deemed just and proper by this Court.

**FOR A THIRD CAUSE OF ACTION**
**CIVIL CONSPIRACY UNDER 42 U.S.C. § 1983**
**(Against All Defendants)**

151. Plaintiffs reallege and incorporate by reference all preceding paragraphs as if fully set forth herein.

152. Defendants reached an agreement, express or tacit, to deprive Plaintiffs of their constitutional rights as alleged herein.

153. The agreement and conspiracy among Defendants included a common plan and design to:

a. Enforce building code requirements against the Subject Property without legal justification or statutory authority;

b. Deprive Plaintiffs of their property interest in business operations without notice, hearing, or due process;

c. Seize Plaintiffs' property in violation of the Fourth Amendment;

d. Take Plaintiffs' property without just compensation in violation of the Fifth Amendment;

e. Target Plaintiffs for arbitrary and unlawful enforcement action.

154. Each Defendant was a willing participant in the conspiracy and took affirmative steps in furtherance of the common plan.

155. The City of Woodruff, through its employees and agents, conspired with CC&I Services and Defendant Taylor to issue the unlawful citation and enforce the unconstitutional shutdown order.

156. CC&I Services and Defendant Taylor, acting under the authority delegated by the City, conspired with the City to conduct the inspection, issue the citation, and enforce the cease-and-desist order against Plaintiffs.

157. Defendants had a meeting of the minds to accomplish the unlawful objective of shutting down Hometown Pawn without legal justification and without constitutional process.

158. Each Defendant's actions were taken pursuant to or in furtherance of the conspiracy.

159. Defendants' conspiracy was motivated by a deliberate and targeted animus toward Plaintiffs and a willful disregard for Plaintiffs' constitutional rights.

160. The conspiracy among Defendants was the direct and proximate cause of the deprivation of Plaintiffs' constitutional rights.

161. As a direct and proximate result of Defendants' civil conspiracy in violation of 42 U.S.C. § 1983, Plaintiffs suffered substantial compensatory damages, consequential damages, and are entitled to declaratory relief, punitive damages against the individual Defendant, attorneys' fees and costs, and all other relief deemed just and proper by this Court.

<h3 align="center"><u>PRAYER FOR RELIEF</u></h3>

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor and against Defendants as follows:

A. Declaring that Defendants violated Plaintiffs' rights under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution;

B. Awarding Plaintiffs compensatory damages in an amount to be determined at trial, including but not limited to:

1. Lost business revenue during the period of forced closure;

2. Lost business opportunities and customer relationships;

3. Continuing overhead expenses incurred during closure;

4. Damage to business reputation and goodwill;

5. Emotional distress and mental anguish;

6. Other economic and non-economic damages proven at trial;

C. Awarding Plaintiffs consequential damages, including all reasonably foreseeable economic losses resulting from Defendants' unlawful conduct;

D. Awarding Plaintiffs punitive damages against Defendant Clark Taylor in his individual capacity in an amount sufficient to punish and deter similar conduct in the future;

22

E.      Awarding Plaintiffs their reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988;

F.      Awarding Plaintiffs pre-judgment and post-judgment interest as allowed by law;

G.      Granting such other and further relief as this Court deems just, proper, and equitable.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs hereby demand a trial by jury on all issues so triable.

Respectfully Submitted,

**KILLOREN, KISSINGER, DANTIN, DENTON & DUNHAM, P.C.**

s/Ryan F. McCarty
Ryan F. McCarty, Fed Bar No. 12422
KD Trial Lawyers
178 W. Main Street (29306)
P.O. Box 3547
Spartanburg, SC 29304
(864) 585-5100
ryan@kdtriallawyers.com

*Attorney for Plaintiffs*

February 13, 2026
Spartanburg, South Carolina

23